Good morning. May it please the court, Shai Bronstein for Petitioner Appellant Tracy Lynn Escobedo. I reserve five minutes for rebuttal. Mr. Escobedo was denied his Sixth Amendment right to a trial by an impartial jury. During voir dire, veneer person Hamer stated that she could convict the defendant, Mr. Escobedo, on proof less than beyond a reasonable doubt. Now, defense counsel tried to strike her on multiple occasions to try to remove her from the jury, and he asked for additional preemptory strikes in order to take Ms. Hamer off the jury. But the court denied each of them. Oops. Okay. That was either a really good argument or a really bad one. Justice is blind. Somebody back it to a light switch. We good? All set. All right. Press on. Okay. Well, the court denied those requests, and Ms. Hamer served on the jury. And that structural error requires that Mr. Escobedo Okay, let me ask you about that, because the first thing that jumped off the page when I read this as a former state trial judge is you didn't follow the path that you have to follow when a cause challenge is denied, which is strike that person preemptorily and then say you ran out of strikes on other people and left somebody on the jury who shouldn't have been on the jury. And you all didn't do that, right? I know you have an argument about that's waived, but just answer that. You all didn't do that. You didn't do the sequence in Texas law. That's correct, Judge Haynes. Okay. And then your argument on that is they sort of waived the waiver, if you will, by not raising it in a timely fashion. So that's your argument, right? I'm trying to get to a question, so I just want to be sure I'm understanding. Sure. There's actually, our first argument is not the waiver. It's actually that the last reason state court opinion on this did not rely on the procedural bar. Because the habeas court actually addressed the merits, and in addressing Escobedo's state habeas petition, they said that there was no constitutional merit to the claims. Therefore, the last reason decision was not on the procedural bar, and therefore, this court should proceed to the merits as well. Okay. Do we lack the power to consider that procedural bar as a result of the whole sequence by which this arrives on our desk? Yes, Your Honor. Because, as the Supreme Court held in Yields v. Nunnemaker, if the last state court to be presented with a particular claim reaches the merit, it removes any bar to review that might otherwise have been available. So in other words, because the state habeas court actually went to the merits and said that there was no constitutional merit to Escobedo's claim, rather than relying on the procedural bar, this court cannot rely on the procedural bar. But even if it could, the government waived that, as we argued in our briefs, by not raising it in the district court below, not raising it in its opposition brief, in its response brief initially, and only raising it at the very end of its supplemental brief. So in the first place, there is no more procedural bar because the state actually disregarded that on his state habeas appeal. But even if there were, the government has waived that argument. In terms of the statements that the near person, Hamer, made, she stated that she would be willing to convict on less than beyond a reasonable margin. Okay. I'll tell you the problem I have with this is, you know, I presided over a lot of confusing and convoluted questions that if you were a lawyer, you would understand, but no one else would understand. And that's kind of how this comes across to me, where he's creating this clear and convincing evidence, and then the reasonable doubt, and trying to create this dissonance between the two. And the jurors aren't seeing that. They're not seeing that difference. But they're not saying that they would have a reasonable doubt and still convict. So then that's the part that I'm having trouble with, is how can we really show the notion of a biased juror? This isn't someone who says, yes, I've already decided you're guilty. This is someone who's struggling with very poor questions that are really very confusing. Well, Judge Haynes, I would disagree that the jurors were all confused by this. In fact, the vast majority of the veneer panel understood the question, and they said that they could tell the difference between beyond a reasonable doubt, which the state of Texas does not define, and the next highest standard, clear and convincing evidence. And in fact, this procedure of defining the lower standard and then asking jurors whether they understand the difference and would hold the government to the higher standard has been endorsed by the Texas state courts. In Fuller v. State, which is cited in the supplemental brief of the government, the state court essentially says that we think that it is entirely appropriate, because beyond a reasonable doubt is not defined, for trial counsel to try to make sure that the veneer members understand the government's burden of proof by defining the lower standard and then making sure they'll hold the government to the higher standard. But the confusion on the jurors' part, to me, the question I would have is, would you must find Mr. Escobedo guilty beyond a reasonable doubt? That's the question. Now, peremptorily, I might strike these people, sure, but the question for cause is that, and I didn't see that asked. Now, I could have missed it. I went through all of this more dire stuff, and I may have missed something, but I didn't see where that question was asked. It's the key question for a cause challenge. Well, Your Honor, I would agree that had you or had I been the trial counsel, we might have asked it in a clearer way. But the point here is that most jurors did understand what the defense counsel was driving at, and most of them did say, I understand the difference beyond a reasonable doubt and clear and convincing evidence. And in fact, and most importantly here, Ms. Hamer understood that difference as well. During the colloquy with her, she initially said that the evidence would have to be awfully high for me not to have a reasonable doubt. Just to clarify, are you challenging only Ms. Hamer or all six, a combination, or she alone? Judge Willett, we're only challenging Ms. Hamer. Initially, Mr. Escobedo was proceeding pro se, and he did draw attention to all six of these jurors, some of whom did appear to be confused. But Ms. Hamer is the only one, as Judge Haynes, getting back to your question, she's the only one who first said that she understood that beyond a reasonable doubt required a very high standard to prove something more. And then during that colloquy, she says, but I still could convict on less than that standard. And despite that, there was no peremptory used against her? There was no peremptory used against her. And obviously, I was not the trial counsel and I can't explain his precise trial strategy, but part of the issue was that there were 15 jurors who expressed some degree of confusion about, or 15 veneer members, excuse me, who expressed some degree of confusion, and trial counsel only had 10 preemptory strikes. He actually asked for more, and he did strike one of those individuals using a preemptory strike. He was denied his request for further preemptory strikes. So essentially, it would have been an impossible endeavor to remove all of the potential jurors. But you're really zeroing in on Hamer as somebody who wasn't confused and was refusing, in your mind, to follow instructions and all of that, and would convict on a lower, and yet Hamer was left on the jurors. I mean, that's different. If 15 people are confused, then that strikes me as going back to my original point, which is this was confusing. And I thought it was Hamer. Well, then why wouldn't Hamer preemptorily strike? I mean, you've got a little bit of a problem of kind of the whack-a-mole thing, because it's all bouncing up and down here. Well, Your Honor, it's true that trial counsel could have used a preemptory strike on her. Trial counsel may have believed that more jurors were problematic, and therefore that it would have been an impossible endeavor. We can't know exactly what the tactics were, but the point remains that Hamer should have been removed for cause. Going back to your point about could convict, I was a Bonaire member on a Bonaire panel in Texas once, and I was a lawyer at the time, and so the lawyer thought, the plaintiff's lawyer thought this would be great to use me to illustrate a bunch of legal points to the jury. Not a good idea, but in any event. So he said, Ms. Haynes, could you please define preponderance of the evidence? And I said, it's whatever the judge defines it as. I'm telling you the court's instructions, and not my own thought or knowledge of the law. And the judge backed me up on it, because he kept pressing me. The lawyer kept pressing me, and the judge said, Ms. Haynes is correct. I tell you the instructions. And so it strikes me that the jurors saying, I could convict on probable cause, if that was the jury instruction that they got, that would be correct. So that's why I think this thing about would you follow the court's instructions is so important. Because a juror saying I could convict on any standard is actually true. That's different from saying I wouldn't follow the standard that the judge gave me. But Your Honor, in this case, this colloquy had been going on for quite some time. 22 jurors were asked before Hamer, and before this question was posed to any of those jurors, defense counsel for Mr. Escobedo said, the government's burden of proof, and in fact even before that, the prosecutor created confusion in the first place by bringing up this idea and saying, we are going to have to prove this case to you beyond reasonable doubt. And the government said that is much less than beyond the shadow of a doubt, and that was way in excess of what the government had to prove. So in essence, the government gave a sort of instruction to the jury about what its proof would be, and so defense counsel was left in a position of having to kind of clean that up and clarify, do these jurors understand what beyond a reasonable doubt is, and will they hold the government to that burden of proof? And so defense counsel began by saying, you know, the state, beyond a reasonable doubt is the highest one we have, the state does not define it, but it does define the next one down. And in fact, during the voir dire, the judge actually did issue an instruction saying, I will instruct you to apply the standard beyond a reasonable doubt. So in other words, the jurors were well informed of what the correct standard was. But did Ms. Hamer ever indicate in any way, shape, or form that she was unable, that she was unwilling to apply or to follow the court's instructions on the burden of proof? She didn't, the question didn't specifically go to, will you follow the court's instructions, but the formulation is essentially, this is what the court will instruct you, do you understand what that is, and then will you apply that? So there's kind of a, there's a missing step, or there's a, not a direct statement. But her responses to that gave no impression she was unwilling to follow the court's instructions. She didn't say that, but she did say, when told the court will instruct you this, would you apply that standard? She did say no, which is essentially, you know, it's two steps. Can you read that to me? Certainly. What you're saying was that? So on page, I believe it was 517 of the record, this is where counsel lays out the three standards of proof, and then the specific back and forth with Hamer begins at page 520 of the record. And then she says, the facts would have to be awfully high for me not to have a reasonable doubt. Counsel clarifies, the question I'm asking is, if you have a firm belief or conviction, which he had earlier explained was the clear and convincing evidence standard, is that by itself enough for you? And she says, it depends how the facts are coming out and how I believe. Because like I said, I don't know how this works, it's going to be left up to the facts. He says, he tries to clarify it, and then she says, if I do feel like he's guilty, yes, there could be a reasonable doubt. I'm not saying that I'm completely ruling that out. And then trial counsel clarifies. So that's her understanding beyond a reasonable doubt. And then to clarify, he says, would you find the defendant guilty merely by having a firm belief or conviction that the allegations against him are true? She says, right. I could. Yes. I could. To me, I could is a little different than I would. I mean, you're parsing this awfully finely, so we're parsing it awfully finely, because you're saying this is structural error that gets a new trial based on this very confusing line of questioning. So that's why I'm being picky, because y'all are being picky. She said, could. And I agree with that. I could, too. Except I wouldn't if the judge instructed me differently. Well, Your Honor, as you're well aware, the veneer process is always a little bit messy. It is very rare that you would have a statement from a juror saying, I will not follow. I would never follow. This seems to be one of the clearest statements you could have. That's not true, because that's not true. These questions go back and forth. We've all been there. They go back and forth. And when counsel is there, sees what's happening, counsel is trying to lay a predicate to put the judge in a box. You've got no choice but to strike this person for cause. And he never really asks the questions that leads to the inescapable conclusion that this is a cause challenge. If you don't, I'm going to have to preempt. He just keeps going, playing this tennis match with a question.  Give a question. And I see what you're getting. But this still, to me, seems like a step removed from, this is clearly a cause challenge, Your Honor. You've got to strike for cause. He says, I could. But how do we get from that? There's no way I can follow what the judge tells me in terms of the victim. I mean, you're reasoning it sort of out as a syllogism, but you're making the argument it's a structural error. And it seems like it takes a little bit of a stretch to get there. I mean, we get your argument, but I think you may be making too much. It's just back and forth on the way he asks the question. And it's not as clear as you would surmise. Yeah, I got it. But the red light doesn't save you from my questions. Thank you. I get it. But anyway, I'll just, I'll give you a simple declarative sentence with no semicolons and a bow, because I stopped you in the middle of a thought. Did you need to make it? Okay. And so if I could just very quickly say that I think when one parses the text, you know, with that finally looking at each word, it could appear that there's some confusion. But I think that it's important for the court to look at the broader context. That is what the prosecution said first, defining the standards. What defense counsel said, trying to set those three levels and then look into the differences. And the fact that this policy had happened 23 or 22 times before Hamer was questioned. And so she understood what the defense counsel was trying to get at. And she did define beyond a reasonable doubt before saying that she could convict on a lower standard. All right. Thank you, sir. You've preserved your rebuttal time. Thank you for your responses to the court's questions. All right. Mr. LaFont? May it please the court, Jason LaFont for SLE, Lori Davis. Juror bias comes in two forms. A juror could be personally biased against a defendant or a juror can be biased against a law. The latter form of bias, which is what petitioner alleges here, arises from a juror's personal antipathy towards a law, not his ignorance of that law. Supreme Court made this clear in Adams Street, Texas in Wayne Wright v. Witt. In which the Supreme Court focuses on a juror's personal views, not his legal acumen. So somebody says in a death penalty case, I just refuse to ever give the death penalty, is different from somebody who's confused about how the death penalty might come about and mitigating versus aggravating, et cetera. That is correct, Your Honor. The Supreme Court expects that jurors are not going to be experts in the law. And in fact, it says, and this court says, that an essential feature of the jury is the interposition of the common sense judgment of laypersons between the accused and his accuser. We don't want only lawyers as jurors. So the court accepts that- That would be quite a panel. That would be quite a panel. So courts accept and tolerate jurors being unable to express themselves carefully or even consistently, as Patton v. Yount says. And so, also, what we need to look at here is that we're on habeas review. And so the trial court found that there was no bias. And so what you need is clear and convincing evidence to show bias. And this court has held in multiple cases that in order to show that you need an unequivocal statement of partiality. Something like Your Honor is speaking of. Somebody saying, actually, no, I refuse to apply that law. Or somebody saying, I think criminals get off too easily. And I think there should be a lower standard. And I'm just not going to accept this higher standard. Which Ms. Hamer never said anything along those lines of being hostile to the idea beyond a reasonable doubt. It's that last part, Your Honor. And I will not accept a lower standard that you need. And so what the trial court found here is that you didn't have bias. What you had was confusion. And the transcript of Boar Dyer gives a source of this confusion. Now, my colleague here points out that there were 22 jurors that were asked this question. But what he doesn't mention is that during this time, a petitioner's counsel defines clear and convincing evidence at the beginning. 22 jurors later, he gets to Ms. Hamer. He never reiterates the definition. Never gives any further explanation of what he's talking about. So it's not as if he held up the clear and convincing standard and the reasonable doubt standard. And Ms. Hamer said, well, I'm only going to apply the clear and convincing evidence standard. What happened here was he got to Ms. Hamer. And Ms. Hamer gives her own lay conception of what beyond a reasonable doubt is to her. She says, first, well, it would require an awful lot of facts for me to beyond a reasonable doubt. That's correct. And she says, I could think that he's guilty and still have a reasonable doubt. And that's also correct. And those answers are nearly identical to answers given by previous jurors that petitioners counseled. But then you have this exchange about that you could have a reasonable doubt and still convict. Or would you do that? And then she said, I could. And so am I being too technical by saying could is different than would? Well, you have even more than that, Your Honor. And so the petitioners counsel for previous jurors accepted those answers and said, all right, that's fine. I'll move on. But with Ms. Hamer, for some reason, he asked a leading question. He doesn't say reasonable doubt. He doesn't say clear and convincing evidence. He said, so if you had a firm conviction of his guilt, would you convict? And she says, yes. But we have no idea what that means. So you're saying I could have a firm conviction and have no reasonable doubt. It's not mutually exclusive. Right. As another veneer person said, if I'm completely convinced, then that's my conviction. And so what you have here is you have clear and convincing, which equals a firm conviction on one hand. And beyond a reasonable doubt, which this court has said means firmly convinced. I mean, those are not easy words for a- And that's why Texas doesn't define it. Well, not just Texas, but the Supreme Court says you don't have to define it. And not only that, the Supreme Court has said that attempts to define it normally do more harm than good. What we're doing here is we're leaving it up to the common sense judgment of laypersons. Let me ask you this. If we were persuaded that actually the cause challenge should have been granted, and she shouldn't have served on this jury, would that be structural error or would it be something else? I would submit that it's not, Your Honor. This court has held that personal bias against the juror is structural error. And in that case, the court said that it's clearly established by the Supreme Court. That is, in fact, not correct. I think as Judge Owen went through in her concurrence in Austin v. Davis and showed that, in fact, the Supreme Court has never said anything about juror bias. But that is the law in this circuit. It's a split from other circuits. There's no reason to exacerbate that split by applying structural error to this other form of juror bias. Not lacking the law. Right, which is, in effect, kind of a legal error. It's akin to an incorrect jury instruction, which is not structural error. I will concede that the Supreme Court has held that an incorrect reasonable doubt jury instruction is structural error. But later on, the court expressly disclaimed the reasoning of that case in Nader. See, the thing that gets me, I like to think, and maybe I'm just kidding myself, but that for eight years when I would look the jurors in the eye and I would give them instructions and I would say, this is the burden of proof and this is this and this is this, that they would follow that. And my experience was that, I mean, I can remember a jury that deliberated for two days and afterwards a juror told me they were crying about proximate cause. And so, obviously, they took it seriously and so we assumed that. And so does that have any play in this? That had Ms. Hamer sitting there, whatever she thought before, when the judge looked her in the eye and said, if you have a reasonable doubt, you can't convict, you would have followed that. And my colleague points out that the judge, during voir dire, interrupted and gave a reasonable doubt instruction. Now, that was after Ms. Hamer was questioned. So there was no like, so as I said before, these two things were not right in front of her and that she picked the wrong one. But not only that, if she had any confusion, it wasn't biased. What Petitioner's counsel could have done was he could have requested a jury instruction saying you have to go higher than clear and convincing evidence in case he had any doubt about the confusion. He didn't do that. There's no request for any sort of explanatory jury instruction here. And so when we accept that jurors will apply their common sense, will take their jobs seriously and will follow the court's instructions, we trust that even if they can't express themselves clearly, that they're not biased unless there's an unequivocal statement of that bias. And there is simply no unequivocal statement here. And so Petitioner cannot show clear and convincing evidence of bias and therefore cannot support this plan. But in the trial itself, what was or was there, what instructions were the jurors given relative to? The jurors were simply told that they have to be – well, so during WIDAR, as we've stated, the court gives an instruction on beyond reasonable doubt, says it's the state's burden, it's not beyond a shadow of a doubt, it's beyond a reasonable doubt and kind of goes on in that vein. When it gets to the end of the trial, the judge simply says you must find beyond a reasonable doubt. He doesn't define it. Texas doesn't define it. The Supreme Court has said that you often do more harm than good when you try to define it so the court – Yeah, as we see. Right. Well, I'm trying to, yeah, ratchet it in because, yeah, reckon it. I mean, I was a trial judge. And while we didn't have anything like the Fifth Circuit pattern, there was an instruction, you know, given the jury. I mean, it's pretty generic and I'm not going to say it, you know, like a bolt of lightning somebody understands, but when you've got a jury with all these legal terms that, you know, they've never seen before and so on and so forth, it did strike some sense of reiterating what the judge has said at the beginning of the trial and I'm analogizing that's what happened here, but you've explained it just – whereas, you know, in a federal trial, of course, we've got the pattern charges that still may not make it clearer, but, you know, that's kind of what the jury gives. But that's helpful. At the end, though, the judge just does reiterate that it's beyond a reasonable doubt. Yes, Your Honor, and there are more complicated concepts than even a reasonable doubt that we trust jurors to understand,  to someone's satisfaction. And on that point, if I could just – my colleague talks about the various jurors who got this answer right. If you go through the transcript, you'll see that almost exclusively those were answers to leading questions. And there's a lot of yeah, yeah, yeah, which you see when, you know, you get in a bit of a rhythm, which is why that's sort of a bad way to do a voir dire. You know, do you agree Michael Klein's entitled to a fair trial? Yes, yes, yes, yes. Well, you're not getting anything out of that. They're going to say no, but you're trying to get to – that might affect that, then you've got to ask something more probing than just, you know, can you be fair? And in Wainwright v. Witt, the court says that the burden is on the adversary seeking exclusion to establish partiality through questioning. And so the counsel asked a leading question that did not show anything. And so if he actually wanted to try to show bias here, he needed to ask a very simple question. Will you apply the beyond a reasonable doubt standard? Or will you apply a lower clear and convincing evidence standard? Will you follow the judge's instruction if the judge says it's beyond a reasonable doubt or not, period? That's correct. If the judge says you can't convict if you have a reasonable doubt, would you nonetheless do so? I mean, to me, those are the questions and they weren't asked. But I don't – your counsel opposite says we don't have to ask it quite that clearly to win, so I mean that's – I have to look at that further, but that's a concern I have. You can look to Virgil v. Dretke when it says clear statement. You can look to the various cases that we cited in our 28-J letter that all say you need an unequivocal statement. This court has never held that something like this can show juror bias. OK, let me ask you – oh, I'm sorry. I was going to ask a separate – a different issue about the procedural default claim. Yeah, that's why I was here. I yield. We're in Texas. I yield. As I said, it jumped off the page to me that they didn't do the sequencing necessary to preserve the challenge to Ms. Hamer, and so I'm wondering why it didn't jump off the page at you, but also why – what's your response to the argument that the state court adjudicated this on the merit so you can't raise a procedural default, and then the second argument is even if you can, you didn't do so timely? Sure. First, while the state habeas court did get to the merits of this case, the state habeas court also said it's not cognizable on habeas. So that has got to be something more than merits, and what that goes to is the fact that it was forfeited. And so you can look to the state habeas opinion and find a procedural default there, and when a court relies on both, you can rely on the procedural default. Now, the fact that this was not raised in the district court or in the earlier briefs in this case is of no matter, because this court can raise procedural defaults sua sponte, and this court has held it as only an affirmative waiver that can get rid of a procedural default. A forfeiture does not apply to procedural default given the federalism concerns, the comedy concerns, and things of that nature. But I mean, if this, well, OK, so why should we, assuming, arguendo, we have discretion but aren't required to consider your argument about what I'm calling the sequencing, why should we exercise our discretion to consider it, given that, as I said, it jumps off the page, y'all didn't raise it earlier, why should we? Well, your honor, because this court has an independent obligation to consider federalism and comedy concerns and to protect those of its own volition. Well, that sounds good, but I mean, if it's so powerful, you had that arrow in your quiver, so why'd you let it sit in the end and wait on us to say, well, you can do it. You got the power. Your honor, I did not offer the brief, so I can't give you a precise answer to that question, but I can say that it was raised. If it's the silver bullet, it was the silver bullet then, and you know, like, OK, here's the deal. But if you don't believe procedural default, then go to the rest. Instead, it comes up sort of in the supplemental, and so it might suggest it's not quite as potent as you're now saying that the state court did all of the above on the merits and said to forfeit, et cetera. Well, your honor, I would submit that the likely reason that it was not raised until probably later in the briefing is that this is not a particularly close case, that the merits of this case are clear, and so that was the focus of this case, although I will say I'm not aware of the reasons. I mean, if you could win on a technicality, you assert the technicality. It's not the first time a government would argue a technicality, and not the first time a technicality would win on either side. So, I mean, and I'm not sure it's a pure technicality because this was an important sequence that I relied on as a trial judge because people make a lot of challenges, cost challenges, this and that, and whatever, and you're trying to deal with a lot that's moving when you're doing a voir dire as the judge, and so you want to be sure that this sequence is followed because it gives the judge another chance to kind of take a look at, oh, my gosh, you're singling out him, or maybe I need to think about that again, et cetera. So it's not merely a technicality. It is kind of important, at least in my head, for what it's worth when I was a state trial judge. Your Honor, we would never say that procedural default is a technicality. It's a very important concept, and it should be applied in every case, and although we briefed it late, we did brief it, and we would ask the court to apply it. Well, we have a case in Fisher where we acknowledge that sort of your argument about sua sponte, noting the procedural voir, but in that case the panel didn't invoke it because it said the defendant didn't have adequate notice that it was going to be, you know, going to be invoked. So it somewhat embraces your notion, yes, we could do it, but it seemed there the panel was reluctant because of notice, and then they kind of say, well, it wasn't raised too low, raised in the supplemental brief, so to some degree, and, you know, Fisher might say we could, but sort of leans towards not, but it may be in that case it was your argument, well, it was strong on the merits otherwise, so maybe that's why they didn't do it. I don't know. Is there another case you rely on besides that? Well, no, Your Honor, except that the lack of notice doesn't apply here. The petitioner's entire reply brief on supplemental briefing was dedicated towards this issue, so they have, petitioners have the opportunity to argue. It's really y'all that didn't get a chance to respond because it came up in the reply brief. Understandably, because they were responding to your, I'm not challenging them, but you haven't had a chance to respond in writing. Yes, until now. That's correct, Your Honor. And if Your Honors have no further questions, I will see to the balance of my time. All right. Thank you, sir. Thank you. Back to you, Mr. Brunson and Ruth Bowles. Mr. LaFont said you've had a fair opportunity to respond to the procedural default issue. Your Honor, we don't believe that we've had a full and fair opportunity. In the reply brief, which we weren't entitled to and which we filed simply to address that this issue had never been raised before, we didn't give a full discussion of the procedural bar. That's a very complicated issue. It gets into issues of Texas state procedural law. It gets into whether he had cause for the default. So in other words, there was no fair and full briefing, which would have had to have been begun by the state in order for us to have a full opportunity for that. Now, I just wanted to very quickly touch on the structural error issue. This court has made clear that seating a single biased juror is a structural error. In Virgil, at page 607, it said, certain errors in the trial process are so basic to a fair trial as to defy harmless error review. It is clearly established that the Supreme Court views the denial of the right to an impartial decision-maker as such an error. In addition, the Supreme Court in Martinez-Salazar, at page 316, said that a district court's ruling that results in the seating of any juror who should have been dismissed for cause would require reversal. In other words, the structural error issue, I think, is fairly clear in this case. To the extent that the court finds that juror Hamer was, in fact, biased, then it is a structural error. You've kind of made two arguments, though. One is that Hamer was refusing to follow the law, and we've, I think, exhausted that analysis. But the other one seems to be Hamer didn't understand the law, and I'm not sure that's the same thing as a biased juror. A juror who's confused... There's a lot of confused jurors, and the role of the court and the lawyers is to try to clear up that confusion as the trial goes on and so forth. The judge has to give clear instructions and so on. So if we were to conclude that Ms. Hamer was simply confused by this line of questioning, would that be structural error to see her? Confused, ignorant, if you will, and I don't mean to call her out, I don't know her, but confused, ignorant, whatever. Let's use all the adjectives except someone who says, I refuse to follow the law. Take that adjective out, confused and ignorant. It's that structural. Well, Your Honor, we would submit that Juror Hamer was not confused because she did lay out the higher standard and then said that she could still apply that. But even if she were confused, the question is whether she was willing and able to apply the law as instructed. Yeah, which no one ever asked her. So what I'm saying is the answers you are focusing on, if we were to conclude those merely evidenced confusions... So I know you think she's biased in the sense of refusing to follow the law. Fine, put that aside. Let me ask a hypothetical. Of Jane, the confused juror, and she gets seated on the jury, is that structural error? If a juror is merely confused, then that would not be structural. But to the extent that that confusion results in the juror making a statement that they're unable to follow the law and that they could do something that is opposed to the law, then that would be a structural error. I also just want to quickly... Another point on the procedural default issue. My colleague at the state essentially said that in the state habeas case, they were... that it was dismissed as not cognizable. But in the record at page 1140, this was the trial court's recommendation there. It essentially said that there was no constitutional error and that, therefore, there was no impartial jury. And so if the court looks at that, the state habeas court is dismissing the habeas petition based on the merits, not on the procedure. But do you agree that if there were two grounds and one of them was procedural, then that would still preserve the ability to raise the procedural default? If the state habeas court had said that there was a procedural error, then yes. But they're not cognizable. What is that? I mean, it sounds procedural to me. It's not cognizable because it wasn't a constitutional error. That was at least how I read the statement. So you took that as one big blob rather than two different points. That is how I interpreted it. And finally, I just wanted to highlight that bias is this unwillingness to apply the law. And the state focuses on, as we do, the Witherspoon line of cases and sort of suggests that it's limited to the death penalty. But in Wainwright v. Witt, that was not a death penalty case. Excuse me. It was a death penalty case. But the court explained that the Witherspoon line of cases that says that if jurors don't apply the law or are unwilling or unable to, they're biased. The court in Wainwright said that that was broader than just the death penalty context, that it was a Sixth Amendment ground and not an Eighth Amendment ground. Thank you. All right. Thank you, counsel, on both sides. Appreciate the argument and briefing. The case will be submitted.